IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARZAN WILLIAMS, | No. 4:24-CV-02005 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BETH RICKARD, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

MARCH 26, 2025

Plaintiff Marzan Williams filed the instant *pro se* civil rights lawsuit alleging Eighth Amendment violations by federal officials during and following his transport to FCI Schuylkill. He asserts claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which primarily sound in deliberate indifference to serious medical needs. Because Williams fails to state a claim for relief, the Court will dismiss his complaint pursuant to 28 U.S.C. § 1915A(b)(1) but will grant him leave to amend.

I.      BACKGROUND

Williams recounts that, on February 20, 2024, he was transferred by plane from Oklahoma City, Oklahoma, to Harrisburg International Airport in Harrisburg, Pennsylvania.[1] In Harrisburg, he was placed on one of two transport buses and his

---

[1] Doc. 1-1 ¶ 1.

hands were secured with "black box" handcuffs.[2] Williams alleges that, during the bus trip from the airport to FCI Schuylkill, the transport drivers began to "drag rac[e]" each other.[3] According to Williams, the other bus "r[an] out of road" and "slam[med]" into the bus he was riding in, and then his bus collided with a tractor trailer hauling heavy machinery.[4]

Williams alleges that he suffered bruising, cut wrists, pain, and swelling from the collision.[5] He does not explain how the prisoners were ultimately transported to FCI Schuylkill after the accident, but recounts that—once he arrived at the prison—he went through an intake process that included medical screening.[6] Williams avers that he was screened by a male nurse with the last name "Gibbs."[7] He alleges that he showed Gibbs his legs and wrists, and complained of slight neck and back pain.[8] Williams requested "pain pills," but was informed by Gibbs that he did not have any pain medication that he could give him and that Williams would be called for sick call.[9] Williams was then sent to his housing unit without further treatment.[10]

---

[2]   Id. ¶¶ 1-2.
[3]   Id. ¶¶ 3, 5.
[4]   Id. ¶ 6.
[5]   Id. ¶ 7.
[6]   See id. ¶ 11.
[7]   Id.
[8]   Id.
[9]   Id.
[10]  Id. ¶ 12.

The next day, Williams claims that he woke up late "in pain" and told several corrections officers about his medical concerns.[11]  They informed him that he should "go to sick call" the following day, February 22.[12]  Williams followed this advice and went to sick call and requested to be seen by a doctor and to be given pain medication.[13]  He asserts that he was told to leave and "watch for the call list."[14]

Williams alleges that he went to sick call several more times until, at some point, he refused to leave until he was treated by a provider.[15]  He was seen by an unidentified male nurse who put him on a "wait list" to see a doctor but was not given any pain medication or treatment for the cuts on his wrist.[16]

Williams' complaint, which is dated November 10, 2024, appears to have been drafted on April 11, 2024.[17]  At that time, Williams averred that he had not yet received any medication.[18]  He alleged that he was still experiencing soreness and pain in his neck, numbness and tingling in his back and shoulders, and pain in his right middle finger.[19]

---

[11] *Id.* ¶ 13.
[12] *Id.*
[13] *Id.* ¶ 14.
[14] *Id.*
[15] *Id.* ¶ 15.
[16] *Id.*
[17] *See id.* ¶ 18 ("Today is April 11, 2024.")
[18] *Id.*
[19] *Id.* ¶¶ 16-17.

Williams sues the following defendants: Warden Beth A. Rickard, the United States Marshals Service Justice Prisoner and Alien Transportation System (JPATS), the unidentified "transport officers" who were driving the buses on February 20, 2024, "Medical Officer" Gibbs, and the "Clinical Director" of FCI Schuylkill.[20] He appears to assert Eighth Amendment *Bivens* claims alleging deliberate indifference to serious medical needs.[21] He requests compensatory damages for his pain and physical injuries.[22]

## II.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[23] One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[24] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[25]

---

[20] *See* Doc. 1 at 2-3; Doc. 1-1 ¶¶ 26-28.
[21] *See* Doc. 1 at 1; Doc. 1-1 ¶¶ 32-35. Although Williams alleges that Defendants were acting "under color of state law," (*see* Doc. 1-1 ¶¶ 30-31), it is clear that he is targeting only federal officials. Thus, there is no basis for a claim under 42 U.S.C. § 1983.
[22] Doc. 1-1 at p. 7.
[23] *See* 28 U.S.C. § 1915A(a).
[24] *Id.* § 1915A(b)(1).
[25] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[26] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[27] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[28]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[29] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[30] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[31] Finally, the court must review the presumed-truthful allegations

---

[26] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[27] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[28] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[29] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[30] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[31] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"and then determine whether they plausibly give rise to an entitlement to relief."[32] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[33]

Because Williams proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[34] This is particularly true when the *pro se* litigant, like Williams, is incarcerated.[35]

## III. DISCUSSION

At the outset, the Court observes that because Williams is primarily suing federal actors for alleged constitutional deprivations, his claims implicate *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*.[36] Causes of action relying on *Bivens*, however, have been extremely circumscribed in recent years, and extending the *Bivens* remedy is now a decidedly "disfavored" judicial activity.[37] Nevertheless, the Court need not determine at this juncture whether a *Bivens* remedy exists for Williams' claims because he fails to state a constitutional violation. The Court will address Williams' pleading deficiencies in turn.

---

[32] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[33] *Iqbal*, 556 U.S. at 681.
[34] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[35] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[36] 403 U.S. 388 (1971). Williams also checked the box indicating that he is asserting a claim under Bivens. *See* Doc. 1 at 1.
[37] *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Iqbal*, 556 U.S. at 675).

## A.  Personal Involvement

It is well established that in *Bivens* actions (as in lawsuits pursuant to 42 U.S.C. § 1983), liability cannot be predicated solely on the operation of *respondeat superior*.[38]  Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[39]  Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to liability.[40]

Williams' first pleading deficiency is his failure to allege personal involvement for two Defendants.  Although Williams names Warden Rickard and the "Clinical Director" of FCI Schuylkill, he does not include any allegations of wrongdoing by these federal officials that would establish personal involvement in the purported constitutionally deficient medical care.

To plausibly plead a *Bivens* claim, however, Williams must specify each Defendant's personal involvement in the alleged constitutional misconduct.  His complaint does not do so for Warden Rickard or the Clinical Director.

---

[38] *See Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009).
[39] *Id.*
[40] *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Accordingly, the Court must dismiss the *Bivens* claims against these Defendants pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B. Sovereign Immunity

Williams names the United States Marshals Service Justice Prisoner and Alien Transportation System (JPATS) as a Defendant. However, any *Bivens* claim leveled against this division of the United States Marshals Service—an agency of the United States—is barred by sovereign immunity, as Congress has not carved out an exception to sovereign immunity for such claims.[41] As Williams has neither identified nor received a waiver of this agency's sovereign immunity,[42] this Defendant must be dismissed as well.

### C. Eighth Amendment Medical Indifference

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[43] To state an Eighth Amendment deliberate indifference claim

---

[41] *See Becton Dickinson & Co. v. Wolckenhauer*, 215 F.3d 340, 345 (3d Cir. 2000) ("It is black letter law that the United States cannot be sued without the consent of Congress.") (internal citation omitted); *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (rejecting extension of *Bivens* remedy to claims against federal agencies); *Muhammad v. U.S. Marshals Serv.*, 385 F. App'x 70, 73 (3d Cir. 2010) (nonprecedential) (holding that district court's dismissal of U.S. Marshals Service on sovereign immunity grounds was correct); *Hatten v. Bledsoe*, 782 F. App'x 91, 95 (3d Cir. 2019) (nonprecedential) ("The District Court properly dismissed Hatten's *Bivens* claims against the BOP, as federal agencies are shielded by sovereign immunity absent an explicit waiver."); *Perez-Barron v. United States*, 480 F. App'x 688, 691 (3d Cir. 2012) (nonprecedential) (affirming summary judgment against prisoner-plaintiff, granted on basis of sovereign immunity, for Eighth Amendment *Bivens* claims against BOP).
[42] *See Gary v. Gardner*, 445 F. App'x 465, 466-67 (3d Cir. 2011) (nonprecedential).
[43] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[44]  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[45]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[46]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[47]  Claims sounding in mere medical negligence will not suffice.[48]

Williams does not plausibly allege an Eighth Amendment medical indifference claim against any Defendant.  First, it is questionable whether Williams' minor injuries (bruising, swelling, whiplash) from the bus accident rise

---

[44] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[45] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[46] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[47] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[48] *Rouse*, 182 F.3d at 197.

to the level of a "serious" medical need. Assuming they do, he has not alleged deliberate indifference or causation with respect to any Defendant.

As to Warden Rickard and the Clinical Director, Williams does not allege any personal involvement, so he obviously has not alleged deliberate indifference to a serious medical need. As to Medical Officer Gibbs, Williams merely avers that Gibbs examined him one time for a screening intake and informed him that he could not give him pain medication at that time but to sign up for sick call. In no way do such cursory allegations implicate a constitutional violation. Finally, as to the bus drivers, they were not involved in Williams' medical care.

In sum, while the gravamen of Williams' lawsuit asserts purportedly deficient medical care, he has not plausibly alleged such a claim against any Defendant. All Eighth Amendment medical indifference claims, therefore, must be dismissed pursuant to Section 1915A(b)(1).

### D.    Claims Against Bus Drivers

Williams sues the bus drivers, who he alleges caused the accident through negligent or careless behavior ("drag racing" on a highway). It is unclear what type of *Bivens* claim Williams is attempting to assert against these federal officials. His allegations appear to sound in negligence or gross negligence, which could implicate a state-law claim raised under the Federal Tort Claims Act (FTCA).[49]

---

[49]    28 U.S.C. §§ 1346, 2671 *et seq*.

Yet Williams does not appear to have administratively pursued an FTCA claim through the United States Marshals Service (or any other federal agency),[50] which is a jurisdictional prerequisite to filing such a claim in federal court.[51] Consequently, the Court must dismiss the unidentified federal transport officers from this action, as Williams has not plausibly alleged a *Bivens* cause of action against either officer.

### E. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[52] Williams will be granted leave to amend in the event that he can plead facts that would plausibly state a *Bivens* claim against an appropriate federal actor. He may not, however, reassert his *Bivens* claim against the United States Marshal Service JPATS, as that claim is barred by sovereign immunity.

If Williams chooses to file an amended complaint, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth Williams' Eighth Amendment medical indifference claim (or claims) in short, concise, and plain statements, and in

---

[50] *See, e.g.*, Docs. 1-2 through 1-10.
[51] *See* 28 U.S.C. § 2675(a).
[52] *Grayson*, 293 F.3d at 114.

sequentially numbered paragraphs. Williams must leave one-inch margins on all four sides of his pleading.[53] He must also cure the defects specifically noted in this Memorandum.

In particular, Williams must name proper defendants and *specify* the offending actions taken by a particular defendant. This step is critical for Williams, as his initial complaint is largely devoid of allegations that demonstrate any federal Defendant's personal involvement in the purportedly deficient medical care. He must also sign the amended complaint and indicate the nature of the relief sought. If Williams does not timely file an amended complaint, dismissal of his complaint without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss Williams' complaint pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be granted. Williams may file an amended complaint in accordance with this Memorandum. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[53] *See* LOCAL RULE OF COURT 5.1.